420 So.2d 1045 (1982)
Gene JACKSON
v.
STATE of Mississippi.
No. 53524.
Supreme Court of Mississippi.
September 22, 1982.
Rehearing Denied November 10, 1982.
Darden, Sumners, Carter & Trout, Thomas R. Trout, New Albany, for appellant.
Bill Allain, Atty. Gen. by Carolyn B. Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SUGG, P.J., and HAWKINS and DAN M. LEE, JJ.
SUGG, Presiding Justice, for the Court:
On August 24, 1980, in an area around the Enterprise community of Union County a lumber shed and a farm truck were burned and there were attempts to burn an uninhabited residence and a store resulting in damage in excess of $150,000. Four indictments were returned against appellant; one for second degree arson, one for third degree arson, and two for fourth degree arson as defined by section 97-17-5, 7, 9 Mississippi Code Annotated (1972). The *1046 cases were consolidated for trial, appellant was convicted on each charge, and was sentenced to serve a maximum statutory penalty on each charge. The judgments provided for sentences to run consecutively with five (5) years suspended, leaving twelve (12) years to serve less credit for the three hundred ten (310) days appellant spent in jail before trial.
A co-indictee, Gene Howard, pled guilty before appellant's trial. Howard testified that, on the day of the fires, he and appellant went "riding around" in the appellant's car with the avowed purpose being of staying "away from the law" as they consummed a large quantity of beer. Both men were subsequently arrested for public drunkenness after their car went off the road into a ditch less than one mile from the scene of the fires. Testimony of the arresting officers was that both men were extremely drunk, smelled of gasoline and smoke, and appellant had black smudges on his arms. It is noteworthy at this point that gasoline was used in starting one of the fires.
Neither man was questioned that night due to their intoxication, but the following day Howard gave a voluntary statement to a deputy sheriff implicating the appellant and himself which led to the discovery of the burned truck.
Appellant first complains that the two indictments charging him with fourth degree arson are void for their failure to allege an overt act toward the commission of the crime with which he was charged. The charging part of the indictments are set forth below.
5541-b ... did then and there willfully, maliciously, unlawfully and feloniously attempted to burn a building, to-wit: a store building belonging to J.C. Wooten.
5544-b ... did then and there willfully, maliciously, unlawfully and feloniously attempted to burn a dwelling, to-wit: a dwelling house owned by James Hillis.
The appellant was charged under section 97-17-9, which provides:
(1) Any person who willfully and maliciously attempts to set fire to or attempts to burn or to aid, counsel or procure the burning of any of the buildings or property mentioned in the foregoing sections, or who commits any act preliminary thereto, or in furtherance thereof, shall be guilty of arson in the fourth degree and upon conviction thereof be sentenced to the penitentiary for not less than one nor more than two years or fined not to exceed one thousand dollars.
(2) The placing or distributing of any flammable, explosive or combustible material or substance, or any device in any building or property mentioned in the foregoing sections in an arrangement or preparation with intent to eventually, willfully and maliciously set fire to or burn same, or to procure the setting fire to or burning of same shall, for the purposes of this section constitute an attempt to burn such building or property.
This assignment of error presents the question of whether an indictment in the language of the statute is sufficient or whether it is necessary to allege an overt act. In Jesse v. State, 28 Miss. 100 (1854) an indictment which charged an offense in the language of the statute was quashed because the indictment did not contain averments that the act of burning a barn was done maliciously. The Court held that whether an indictment in the language of the statute is sufficient, or whether other words or acts are necessary to properly charge the commission of a crime, depends on the nature of the offense and the terms in which it is described in the statute. If the offense is fully and clearly defined in the statute, an indictment in the language of the statute is sufficient; otherwise, the indictment should charge the offense by the use of additional words that clearly set forth every element necessary to constitute the crime. The Court stated:
While this is true as a general rule, we apprehend that it only applies where the description of the offense in the statute, taking into consideration its nature and the natural and legal import of the terms used in designating it, is such as to convey a certain, clear, and full idea of the *1047 offense intended to be created, and to embrace every ingredient necessary to constitute it, though the words employed be not the same as would be required in indictments for similar offenses at common law. In such a case, no prejudice can be done to the accused by following the words of the statute. But if the words used in the statute do not, in view of the nature of the offense and the recognized principles of law, describe the offense so as to convey to the mind a full and clear idea of everything necessary to constitute the crime, in such case, the full measure of the offense must be charged, by the use of such words as are necessary and proper, under established rules of law, to characterize it. The difference is simply that between offenses which are fully and clearly defined in the statute, and such as are described generally. In the former, the description contained in the statute is sufficient; in the latter, the offense must be charged agreeably to the rules of the common law. It depends upon the nature of the offense and the terms in which it is described in the statute, whether the one or the other of these rules will apply to the particular case. Wharton's Crim.Law, 132, and cases there cited. (28 Miss. at 109-110)
In Sullivan v. State,[1] 67 Miss. 346, 7 So. 275 (1889) the Court held:
In indictments for purely statutory offenses it is sometimes sufficient to charge the offense by using only the words of the statute. This may be done where the language of the statute is so specific as to give notice of the act made unlawful, and so exclusive as to prevent its application to any other acts than those made unlawful... .
But where the act prohibited does not clearly appear from the language employed, or where, under certain circumstances, one may lawfully do the thing forbidden by the literal meaning of the words of the statute, it is not sufficient to indict by the use only of the statutory words; under such circumstances, the indictment must charge in apt language the unlawful act, that the defendant may be advised of the nature and character of the offense with which he is charged, and that he may by demurrer take the opinion of the court whether the facts charged constitute an offense. (67 Miss. at 350, 7 So. at 275-276)
In numerous cases we have held that an indictment is sufficient to charge an offense by using only the words of the statute. Norwood v. State, 258 So.2d 756 (Miss. 1972); State v. Labella, 232 So.2d 354 (Miss. 1970); Love v. State, 211 Miss. 606, 52 So.2d 470 (1951); State v. Needham, 182 Miss. 663, 180 So. 786 (1938); State v. Coltharp, 176 Miss. 883, 170 So. 285 (1936); State v. Snowden, 164 Miss. 613, 145 So. 622 (1933); State v. Southern Ry. Co., 112 Miss. 23, 72 So. 837 (1916).
However, this Court has never addressed the question of the sufficiency of an indictment charging fourth degree arson under section 97-17-9 when the offense is charged only in the words of the statute. The rules announced in Jesse, supra, and Sullivan, supra, require an examination of the statute to determine if the language of the statute is specific enough to give notice of the act made unlawful, and exclusive enough to prevent its application to any other acts or than those made unlawful.
The statute provides that a person is guilty of arson in the fourth degree for willfully and maliciously committing any one of four acts which are stated disjunctively as follows:
Any person who willfully and maliciously
(1) attempts to set fire to, or
(2) attempts to burn, or
(3) to aid, counsel or procure the burning of any buildings mentioned in the foregoing sections, or
(4) who commits any act preliminary thereto or in furtherance thereof ...
*1048 The two indictments under attack charge that appellant willfully, maliciously, unlawfully and feloniously attempted to burn a store building, a dwelling house, and named the owner of each. The statute clearly makes an attempt to burn the structures described in the indictments a violation of the law if done willfully and maliciously. The indictments were in the language of the statute and plainly and fully informed appellant of the nature and the causes of the charges against him.
Appellant argues that it was necessary to charge an overt act toward commission of the crime with which he was charged. He relies on Maxie v. State, 330 So.2d 277 (Miss. 1976); Stapleton v. State, 130 Miss. 737, 95 So. 86 (1923); Miller v. State, 130 Miss. 730, 95 So. 83 (1923); State v. Wade, 102 Miss. 711, 59 So. 880 (1912). These cases dealt with indictments under the general attempt statute, section 97-1-7 Mississippi Code Annotated (1972). These cases have no application because the fourth degree arson statute is specific in describing the acts made unlawful, and exclusive enough to prevent their application to lawful acts.
We hold the indictments were sufficient to charge appellant with the crime of fourth degree arson.
There is no merit to appellant's contention that there was error in the following instruction:
INSTRUCTION NUMBER S-3
The Court instructs the Jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all, and all are equally responsible for the acts of each in the commission of such felony.
Appellant asserts there was no evidence before the jury to justify the instruction because the indictee recanted his culpability, notwithstanding his earlier plea of guilty. This recantation on the stand does not diminish the fact in evidence that Howard pled guilty and made a voluntary statement implicating himself. The recantation at best, only affected the weight to be afforded his testimony. When an instruction correctly states the law, as this one did, and there is evidence to justify it, granting the instruction is not error. Foley v. State, 348 So.2d 1034 (Miss. 1977).
We also find no merit in appellant's contention that the testimony of accomplice Howard was insufficient to support the verdict. This Court has consistently applied the common law rule that a conviction may rest solely upon the uncorroborated testimony of an accomplice where it is not so self-contradictory, unreasonable, inconsistent or impeached as to be inherently unbelievable. E.g., Greene v. State, 406 So.2d 805 (Miss. 1981); Catchings v. State, 394 So.2d 869 (Miss. 1981); Wall v. State, 379 So.2d 529 (Miss. 1980); Culberson v. State, 379 So.2d 499 (Miss. 1979). Moreover, where the record contains even slight corroborating evidence, we have held the testimony sufficient to sustain the verdict. See Jones v. State, 381 So.2d 983 (Miss. 1981) cert. denied, 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300; Lifer v. State, 189 Miss. 754, 199 So. 107 (1940). Contrary to appellant's assertion, Howard's testimony was not uncorroborated. There was testimony that placed the appellant's car at the scene of one of the fires and there was also testimony that the appellant smelled of gas and smoke and had black smudges on his arm. In sum, we feel that it was for the jury to accept or reject the testimony, especially since the jury was instructed that the testimony of an admitted accomplice should be weighed with great care and caution. The jury had the duty to determine the impeachment value of the inconsistencies or contradictions as well as any testimonial defects. See Jones, 381 So.2d at 989.
Appellant's final contention is that this case must be reversed because the trial judge restricted his right to cross examine the witness Gene Howard on two material points. Initially, it is his theory that he was denied the opportunity to pursue a line of *1049 questions in reference to Howard's plea of guilty. This issue arises in part from the following proceedings at trial:
Q. Did ... Do you remember coming before the Court on each one of these cases and signing a form, a plea of guilty, which said in each case that I fully understand I am charged in this cause with the commission of the crime of arson, and that I am pleading guilty to same.
MR. COLEMAN: Your Honor, if it please the Court, we object to this. This is something, obviously, to confuse the Jury, and I will state a plea of guilty to accessory before the fact is the same as a plea of guilty, and this can serve no purpose other than just to confuse or prejudice the minds of the Jury.
THE COURT: I'm going to have to sustain it the objection now. He's admitted pleading guilty to the charges, and that's all he's required to do.
Now if you want to go into any promises, anything, break it down that way, you have a perfect right to do so.
MR. TROUT: Your Honor, I think that I'm entitled to go into motivation of the witness for the Jury's understanding of how likely it is that this witness is telling the truth today.
In order to do that, I'm entitled, then, to find out why it was that he pleaded guilty ...
THE COURT: Mr. Trout, it's simply a matter for the Court and the Judge that took the plea. It has nothing to do with this case.
Now if you want to impeach him in other things, that is not an impeachable thing. It is merely a question of law, so proceed with your other things.
In denying a motion for a mistrial lodged after he sustained the objection, the trial judge again advised appellant's counsel that:
If you have prior contradictory statements, you can show them, or if you have any matters that were promises or anything of this nature, or threats, or anything else made to him to induce this plea, you've got a right to ask him about that, but as to trying to bring conclusions of law and instruct the Jury through questioning the witness is highly improper, and the Court still rules that you cannot do that, and you will not do it.
Simply stated, the judge's ruling at trial did not amount to a restriction of the appellant's right of cross-examination. The rulings allowed the appellant's counsel to explore any possible correlation between Howard's guilty plea and his testimony at trial. The record reflects that counsel examined Howard at length in an attempt to show that he pled guilty with the understanding that he would testify against the appellant and that he was induced to so plea because of promises made in regard to his sentence. The witness was allowed to answer these questions; therefore, we fail to see any restriction.
The second alleged limitation arises from the following proceedings at trial:
Q. Isn't it a fact that the Court had the right . .. has the right to review your sentence a hundred and eighty days after the date that you entered it?
MR. COLEMAN: Your Honor, we object to that. Certainly, that's improper.
THE COURT: All right. Sustained.
MR. COLEMAN: Ask that the Jury be admonished ...
THE COURT: Ladies and gentlemen of the Jury, disregard it.
... .
MR. TROUT: Your Honor, I want to completely understand the Court's ruling.
I understand that I cannot ask him about the hundred and eighty day period of review.
THE COURT: Yes. I just got through telling you. You can ask him if anybody promised him that to induce his plea.
MR. TROUT: No, sir. That's not the question I want to go into. I want to go into the fact that it exist and ...
THE COURT: Well, ask him if he's testifying because of the hundred and eighty days, if it was promised to him. Go ahead and ask him that.
*1050 After the statement by the court, appellant did not cross-examine in an effort to show that the right of review of his sentence induced Howard to plead guilty and testify for the state, but appellant now complains that he was curtailed in his effort to show the effects this right of review may have had on Howard's willingness to testify.
On review of the entire record, we are not convinced that appellant was restricted in his cross-examination. The jury was made aware of Howard's status as an accomplice and the right of the court to review his sentence. Furthermore, as stated earlier, the jury was instructed to receive Howard's testimony with care and caution.
Finding no reversible error, we affirm.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] This case arose from the famous prize fight between John L. Sullivan and Jake Kilrain in Marion County.