WALLER, Chief Justice,
Dissenting:
¶ 50. A defendant may request a jury instruction on a lesser-nonincluded offense when the evidence supports the inclusion and the lesser offense originates from com *747 mon facts. Here, I find no evidence supporting the assisted-suicide instruction requested by Williams. His defense at trial was he did not commit murder and not that he merely assisted the victim in suicide. Because the overwhelming facts support a murder conviction and because of the lack of a factual basis to support the lesser-nonineluded offense of assisted suicide, I respectfully dissent.
I. The assisted-suicide jury instruction is not supported by evidence.
¶ 51. Even viewing the evidence in a light most favorable to Williams, no reasonable jury could find him guilty of assisting suicide “without resorting to speculation or conjecture” as to the meaning of the evidence. Brazzle v. State, 13 So.3d 810, 818 (Miss.2009) (en banc). Williams had to demonstrate two things to avail himself to an assisted-suicide instruction— that Bracey had committed suicide and that he had helped. The only evidence Williams presented at trial to support his assisted-suicide theory was that he and Bracey had formed a mutual agreement to commit suicide together — a suicide pact.
¶ 52. The plain meaning of a suicide pact — a mutual agreement to die at the same time — does not suggest encouragement or assistance of suicide as contemplated by Mississippi Code Section 97-3-49. See Williams, 53 So.3d at 774-77.[8] First, the evidence at trial does not support that Bracey did take her own life. Second, even if we assume she did, no evidence at trial even slightly suggested that she was encouraged or advised to act because of a mutual agreement with Williams. And he offered no evidence at trial to explain how a suicide pact encouraged or assisted her alleged suicide. Further, for us to interpret the meaning of an alleged suicide pact between these two people (e.g., did she enter it because he forced her, or did she already intend to commit suicide ...) requires a level of speculation not allowed by our law. The stated findings in the Majority opinion do not support Williams’s contention that they had agreed to commit suicide. See Maj. Op. ¶ 46. Had they, in fact, agreed to commit suicide, it does not follow that Williams assisted or encouraged Bracey’s decision simply because it occurred at his apartment and with his kitchen knife.
II. A lesser-nonincluded-offense instruction must arise from the same facts alleged in the indictment.
¶ 53. Some sets of facts lend themselves to prosecution for two separate and distinct offenses. A defendant is entitled to jury instructions on a lesser-noninclud-ed offense when the set of facts surrounding the crime reasonably shows that the defendant is guilty of two crimes — the crime charged and the lesser-nonineluded offense — “without any inconsistency in evidentiary or ultimate findings. ...” Griffin v. State, 533 So.2d 444, 448 (Miss.1988) (emphasis added). We explained the consistency-in-evidence requirement in Gangl v. State, 539 So.2d 132, 136 (Miss.1989) (en banc). The lesser-nonineluded offense must “arise[] out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment.” Id. See, e.g., Moore v. State, 799 So.2d 89, 90 (Miss.2001) (child-scalding incident implicated charges for *748 either felony abuse or misdemeanor neglect).
¶ 54. The indictment here alleges that Williams murdered Bracey. Thus, this becomes the operative fact from which a lesser-nonincluded offense must arise. With the operative fact in mind, we consider all the evidence presented at trial to determine if it supports the requested instruction, without an inconsistency in the ultimate findings. While we do consider the evidence in the light most favorable to the accused, we cannot ignore evidence that is inconsistent with the defense’s theory or that supports the prosecution’s charge. See Griffin, 533 So.2d at 447; Boyd v. State, 557 So.2d 1178, 1182 (Miss.1989).
¶ 55. In our cases addressing lesser-nonincluded offenses, the accused has argued that he is “less culpable” by proposing jury instructions for an offense that logically would stem from the charge or from the operative facts in the indictment. See, e.g., Griffin, 533 So.2d at 447 (simple assault rather than rape); Boyd, 557 So.2d at 1182 (same); Moore, 799 So.2d at 90 (misdemeanor child-neglect rather than felony child-abuse). But here, Williams’s assisted-suicide instruction does not follow logically from a murder charge, and it contradicts the operative fact in the indictment. This result exceeds the boundaries and purpose of our holding in Griffin.
¶ 56. Within the operative facts of this case, Williams cannot be guilty of both murder and assisting suicide. The proposed assisted-suicide instruction requires an irreconcilable inconsistency in the evidence and ultimate findings. A murder charge requires the prosecution to prove the defendant killed the victim. See Miss. Code Ann. § 97-3-19(l)(a) (Rev.2006). Conversely, assisting suicide requires the prosecution to prove the victim killed herself. See Miss.Code Ann. § 97-3-49 (Rev. 2006). Because Williams has not shown how his assisted-suicide instruction follows from the operative facts in the indictment and the facts shown at trial, that he murdered Bracey, he is not entitled to the instruction.
III. When there is strong evidence of the indicted charge, the accused is not entitled to a jury instruction on a lesser-nonincluded offense.
¶ 57. Our cases allowing instructions for lesser-nonincluded offenses rely on the recognition that little or conflicting evidence existed on one element of the indicted crime. Brooks v. State, 18 So.3d 833, 840-41 (Miss.2009); Griffin, 533 So.2d at 447; Gangl, 539 So.2d at 135. Thus, we ask whether a reasonable jury could find Williams not guilty of murder. We need not make a determination on whether the jury could also find guilt for the lesser offense when there is strong evidence of the indicted charge. See Delashmit v. State, 991 So.2d 1215, 1222 (Miss.2008).
¶ 58. Here, the prosecution presented strong evidence of Williams’s guilt for murder. Bracey had been found dead from a knife wound at Williams’s apartment. Following her death, Williams covered her body to hide it from inspectors. Before he notified authorities of her death, he drank beer, watched television, played video games, and ordered pizza. Upon arrest, Williams confessed to the crime, stating “I must have done it. I was the only one there.” At trial, one expert opined that, because of the angle of the knife wound, the strangulation marks around her neck, and the defensive marks on her hand, Bracey’s death was a homicide. The other expert could state only that her death could have been a homicide or a suicide. However, after a review of all the evidence, not just the autopsy, no reasonable jury could have found him not *749 guilty on any element of the murder charge. See Dampier v. State, 973 So.2d 221 (Miss.2008); Jones v. State, 918 So.2d 1220, 1234 (Miss.2005).
¶ 59. Because I would affirm the decision of the Court of Appeals, I respectfully dissent.
GRAVES, P.J., RANDOLPH AND PIERCE, JJ., JOIN THIS OPINION.

. "Because suicide carries a tremendous social stigma, it is tempting to assume that if two lovers decide to commit suicide, one of them has to advise or encourage the other to do so.... [This] is by no means a logical inference that an appellate court may take notice of in determining whether there is sufficient evidence [for an assisted suicide instruction].”